1  **KEYHAN MOHANNA**
   **KEYHAN MOHANNA AS TRUSTEE OF THE**
2  **KEYHAN REVOCABLE TRUST DATED JULY 8, 2003**
   1405 Greenwich Street, Apt. #6
3  San Francisco, California 94109
   Tel: (415)260-1873
4  Fax: (415)474-2900
   Email: keyhan6@yahoo.com
5
6  PLAINTIFF IN PRO SE

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  KEYHAN MOHANNA,                          )   Case No.  C.V.  16  1036
    INDIVIDUALLY AND KEYHAN                  )
12  MOHANNA, TRUSTEE OF THE                  )
    KEYHAN MOHANNA REVOCABLE                 )   ENFORCMENT ACTION FOR
13  TRUST DATED JULY 8, 2003                 )   DECLARATORY RELIEF
                                             )   RELATING TO VIOLATIONS OF
14                                           )   THE FEDERAL TRUTH IN
                                             )   LENDING ACT ("TILA") AND
15              Plaintiff,                   )   WRONGFUL FORECLOSURE
                                             )
16  v.                                       )   [*15 U.S.C.  § 1601 et seq.*]
                                             )
17  WELLS FARGO BANK, N.A.                   )
    SUCCESSOR BY MERGER WITH                 )   **DEMAND FOR JURY TRIAL**
18  WACHOVIA MORTGAGE, FSB;                  )
    FORMERLY KNOWN AS WORLD                  )
19  SAVINGS BANK, FSB ITS                    )
    SUCCESSORS AND/OR ASSIGNS                )
20  and DOES 1-25, Inclusive                 )
                                             )
21                                           )
                Defendants.                  )
22                                           )
                                             )
23
24  _____

25       COMES NOW Plaintiff KEYHAN MOHANNA, individually and as Trustee

26  of the KEYHAN MOHANNA REVOCABLE TRUST DATED JULY 8, 2003

27  ("Plaintiff"), complains and alleges as follows:

28

                            1

                    ENFORCEMENT ACTION

# I.

## NATURE OF THE ACTION

This Enforcement Action is filed defensively and affirmatively under the Federal Truth In Lending Act, hereinafter referred to as TILA, *15 U.S.C. §§ 1601, et seq.* to enforce Plaintiff's rights under TILA, including without limitation, the right to rescind a consumer transaction and to void Defendants' security interest in Plaintiff's Property, by reason of Defendants' violations of TILA and Regulation Z, *12 C.F.R. § 226* ("Reg. Z"). In addition, Plaintiff seeks actual and statutory damages, reasonable attorney's fees and costs by reason of Defendants' violations of TILA. Finally, Plaintiff seeks declaratory relief.

# II.

## STATEMENT OF JURISDICTION

This Court has proper subject matter Jurisdiction over the within action as the real property, the subject of instant action, is so situated and physically located within this California District Judicial System.

Jurisdiction is conferred on this court by *15 U.S.C. § 1640(e)*, *28 U.S.C. §§ 1331, 1337* and by the doctrine of pendent jurisdiction. The Court has authority to issue a declaratory judgment by virtue of *28 U.S.C. § 2201*.

# III.

## SUBJECT REAL PROPERTY AT ISSUE

The Real Property (herein after referred to as "Property"), the subject of any and all claims of any of the Parties hereto, and which is the subject of instant action, and that of which Plaintiff prays for a Decree and/or Order of Declaratory Relief and Quiet Title thereto.  The "Subject Property" address and legal description is as follows:  1405 Greenwich Street, #1, San Francisco, CA 94109. More particularly, the legal description of this property is:

CONDOMINIUM UNIT NO. 1, LOT 50, INCLUSIVE, AS SHOWN UPON THE CONDOMINIUM MAP AND DIAGRAMMATIC FLOOR PLAN ENTITLED "MAP OF 1405 GREENWICH STREET" WHICH WAS FILED FOR RECORD ON DECEMBER 10, 1999 IN PARCEL MAP BOOK 44, PAGES 60 TO 65, INCLUSIVE, AND THE "AMENDMENT TO CONDOMINIUM PLAN" RECORDED MAY 5, 2000 AS DOCUMENT NO. 2000-G769926-00, IN THE OFFICE OF THE RECORDER OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA (REFERRED TO HEREIN AS "THE MAP"), AND AS FURTHER DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS OF 1405 GREENWICH STREET HOMEOWNERS ASSOCIATION RECORDED ON MAY 5, 2000 AS DOCUMENT NO. 2000-G769926-00, OFFICIAL RECORDS OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA (REFERRED TO HEREIN AS "THE DECLARATION").  See attached **Exhibit "A"**

incorporated herein by reference for full legal description.

Assessor's Parcel No: 0523-050.

## IV.

## IDENTITY OF PARTIES

Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto Defendant, WELLS FARGO BANK, N.A., herein referred to as WELLS FARGO, is a national banking and lending institution licensed to do business in the State of California, in and of the County and City where subject "PROPERTY" is so situated and physically located which is within this Courts Judicial District.  WELLS FARGO claims they were granted all beneficial interest in the Deed of Trust from World Savings Bank, FSB, hereinafter referred to as WSB, the originating lender, when they acquired all of Wachovia Mortgage, FSB's, hereinafter referred to as Wachovia, assets.   Plaintiff contends that when Defendant WELLS FARGO acquired the remaining assets of Wachovia, it did not include Plaintiff's debt obligation.

WSB, was not a legal lending institution when the Deed of Trust was executed in this matter.  WSB was an unregistered entity in the State of California. WSB was unregistered and unlicensed to do business in the State of California and their rights to conduct business in the State of California was not permitted. Attached as **Exhibit "B"** and incorporated by reference is a copy of a Certificate

of No Record from the California Secretary of State.

Pursuant to *California Corporations Code 2011(c)*, every such corporation shall survive and continue to exist indefinitely for the purpose of being sued in any quiet title action. Any judgment rendered in any such action shall bind each and all of its shareholders or other persons having any equity or other interest in such corporation, to the extent of their interest therein, and such action shall have the same force and effect as an action brought under the provisions of *Sections 410.50 and 410.60 of the Code of Civil Procedure.*

Plaintiff is unaware of the true names and capacities of any individuals and/or entities sued herein under the fictitious names DOES 1 to 25, inclusive or, to the extent that the names of such individuals or entities may become known to Plaintiff, and as such Plaintiff cannot state with any certainty that such a Cause of Action lies herein as against such individuals or entities, or Plaintiff is unable to alleged the elements of such Cause of Action, at this time, and as such said Defendant are herein named in accordance with the provisions of (*Cal Code of Civil Procedure Sec. 474*). Plaintiff thereon reserves the right to amend instant Complaint to allege the true names and capacities of such fictitiously named Defendant when the same become known or when it has been ascertained with reasonable certainty that such Cause of Action hereunder can be satisfactorily stated and maintained as against each such fictitiously named individual or entity.

Plaintiff is informed and believes and thereon alleges, that in committing certain acts alleged, some or all of the Defendants named were acting as the Agents, Joint Ventures, Partners, Representatives, Subsidiaries, Affiliates, Associates, Successors, Assigns and/or Employees and/or Agents or some or all of the other Defendants, and that some or all of the conduct of such Defendants, as complained of herein, was within the course and scope and agency of such relationship.

At all times mentioned in this Complaint, Plaintiff, KEYHAN MOHANNA, is and remains an individual consumer residing in the County of San Francisco and is the owner, both legal and equitable, of the certain Subject Property.

## V.

## DATE OF DETERMINATION

Plaintiff herein request that the date of the Judicial determination sought be the date the Notice of Rescission was mailed to Defendant which was April 14, 2014.

## VI.

## ISSUES PRESENTED

TILA, *15 U.S.C. § 1635*, *Reg. Z §226.23* allows for a party to rescind the Note and Deed of Trust by operation of law.  This occurred in this case as of April 14, 2014 when Plaintiff sent a Notice of Rescission to Defendant, WELLS

FARGO, and more than twenty (20) days have elapsed without a declaratory action being filed against Plaintiff by WELLS FARGO.

Specifically, the undisputed evidence shows that Plaintiff rescinded the Note and Deed of Trust under TILA *15 U.S.C. § 1635* on April 14, 2014, effectively voiding the contract and debt. Therefore, Defendant has no standing to enforce the Deed of Trust or collect payments under the contract because the contract has been extinguished by operation of law as of April 14, 2014.

The facts are clear and undisputed; the loan that is the subject matter of this case was rescinded and extinguished by operation of law on April 14, 2014. Since Defendant WELLS FARGO failed to challenge the Notice of Rescission within the twenty (20) statutory days mandated under TILA, Defendant, WELLS FARGO, and any other entity, cannot obtain any right or interest to enforce a contract that was made void after April 14, 2014.

### Material Facts Leading to Notice of Rescission

On December 21, 2006, Plaintiff entered into a consumer loan transaction with WSB, the originating entity, for the refinancing of his single family residence that is commonly known as 1405 Greenwich Street, Apt. #1, San Francisco, CA 94109. Plaintiff acknowledges that a Promissory Note ("Note") was executed as part of the Loan transaction. Additionally, based upon information and belief, in connection with the Loan transaction, WSB took a security interest in the Subject

7

ENFORCEMENT ACTION

Property in the form of a Deed of Trust recorded with the San Francisco County Recorder's Office on December 28, 2006 as Instrument No. 2006-I304945-00.

In 2012, amidst disturbing news surrounding banks and lenders regarding the mortgage crisis, and all the settlements and lawsuits that involved WELLS FARGO, Plaintiff decided to inquire and track information regarding the ownership of the debt obligation. Based on information received from Defendant WELLS FARGO, Plaintiff decided to further investigate and track the ownership of the debt obligation.

After numerous letters and Qualified Written Request ("QWR") requesting that they supply Plaintiff with certain information pertaining to the debt obligation, Plaintiff mailed to Defendant, WELLS FARGO, a Notice of Rescission, cancelling the debt obligation, on April 14, 2014. Attached as **Exhibit "C"** and incorporated herein by reference is a copy of Plaintiff's Notice of Rescission. The Notice of Rescission was sent by U.S.P.S. (United States Postal Service) Certified Mail, tracking number 7013-3020-0001-4610-3090.

Under the Act, a lender and/or creditor has no right or authority to grant or deny, agree or disagree with a Notice of Rescission. It is effective by operation of law the day it is mailed out. Strict construction of Reg. Z would dictate that the voiding be considered absolute and not subject to judicial modification. If Defendant, WELLS FARGO, wanted to challenge Plaintiff's Notice of Rescission

or his right to rescind, they were required to file a declaratory action against Plaintiff within the statutory twenty (20) day period mandated under TILA.  They failed to do so.

Despite the fact that Defendant WELLS FARGO received Plaintiff's Notice of Rescission, Defendant wrongfully and illegally foreclosed on Plaintiff's Property on September 25, 2014.

Because WELLS FARGO had failed to comply with Plaintiff's numerous requests and due to Defendant's wrongful and illegal actions, Plaintiff decided to hire a trained professional specialist to conduct a search on the debt obligation.  On September 26, 2014, a research was performed by using the Bloomberg Online Database.  Upon information received, Plaintiff believes the debt obligation was transferred, assigned and/or sold to a private Trust known as the World Savings REMIC 28 Trust, hereinafter referred to as 28 Trust.  The 28 Trust had a closing date of on or about February 26, 2007, well before WELLS FARGO acquired the remaining assets from Wachovia on December 31, 2008.  The information provided to Plaintiff by WELLS FARGO did not match the information Plaintiff received from the Bloomberg Specialist.

As of the date of the filing of this action, WELLS FARGO has not followed the California Uniform Commercial Code in endorsing the subject Promissory Note and perfecting its security interest through valid Assignment of Deed of

Trust.  There is no evidence of any such assignments in San Francisco County records.  Pursuant to TILA, the creditor's interest in the property is "automatically negated regardless of its status and whether or not it was recorded or perfected". (*Official Staff Commentary §§ 226.15(d)(1)-1, 226.23(d)(1)-1.*).

Plaintiff in the transaction complained of herein was made to understand, through the written terms of the contract, that the "Lender" within each contract was named as the sole encumbrancer through a first position lien deed of trust. This was memorialized within the contract under the "Borrower's Closing Instructions" to escrow prior to closing.  These instructions, *id.*, are considered a *condition precedent*[1] to closing the escrow and title passing to the encumbrancer of record (the named Lender).

Plaintiff learned, through research at a much later date, that the named Lender on the Note and Deed of Trust did not, in fact, provide the funds used at closing to fund the escrow.  The parties that actually funded the loan, and who were supposed to be known to the Borrower, were parties known by escrow, the

---

[1] *Borgonovo v. Henderson*, 182 Cal.App.2d 220 (1960) The court stated: "The evidence shows that this was done without express authority. ...No one had possession of the deed was authorized by Plaintiffs to deliver the same to the defendant.  The delivery to the title company was for the limited purpose of recordation.  No authority was thereby conferred to make delivery, and its act in mailing the instrument to the defendant did not have the effect of passing title ..." (Pp. 569-570.)  No delivery of the note, within the meaning of section 3097 of the Civil Code, took place.  As the court says in *Sousa v. First California Co.* (1950), 101 Cal.App.2d 533, 539 [225 P.2d 955], "Only after strict compliance with the condition imposed [emph. ours]... does the escrow holder begin to hold for the party hereby entitled. ..."  *Bogan v. Wiley* (1949), 90 Cal.App.2d 288, 292 [202 P.2d 824], holds, "No rule is better settled than the one that the payee gets no property in a negotiable instrument until its delivery."  And *Todd v. Vestermark* (1956), 145 Cal.App.2d 374, 377 [302 P.2d 347], states: "...a delivery or recordation by or on behalf of the escrow holder prior to full performance of the terms of the escrow is a nullity.  No title passes."

10

ENFORCEMENT ACTION

named Lender, and all ancillary parties to the transaction(s) *except* the Plaintiff.

The actual "source of funds" was never provided to the Borrower or to Plaintiff

upon request, as such, the contract was never consummated pursuant to *12.C.F.R.*

*§226.2(a)(13)* and *California Civil Code § 1550*.  Plaintiff, to date, alleges the

actual lender, the true "source of funds" for the loan has never been identified.  The

"wiring instructions" (funds used at closing from an equitable lending entity to

Borrower's escrow) to escrow were never revealed to the Plaintiff at closing, nor

did any counter-party to the consumer finance transaction ever verbally or orally

advise Plaintiff that there was a different encumbrancer that was considered a

"third party, off-record transaction".  This third party, off-record transaction, was

in fact, specifically stated as an "exception" to title insurance policy through

language of the Plaintiff's closing title insurance policy and as a pattern and

practice of the title industry as a whole.

   Plaintiff acknowledges that an obligation arose as a matter of law by

receiving the benefit of the transaction, however, Plaintiff does not admit that the

obligation that did arise has been memorialized or assented to within the

contractual/quasi-contractual relationship within the written contracts known as the

Promissory Note and Deed of Trust.  Plaintiff alleges that the Borrower never

consented to the terms and conditions that were agreed upon between the surrogate

lender and the unknown "warehouse lender".  The practical effect of this

ENFORCEMENT ACTION

incestuous relationship is a follows:  A)  The "lender" named in the Note in this matter had secured a loan from a third party warehouse lender at different terms and conditions, thus, the surrogate lender named in the Note is a debtor to the true lender of funds[2]; the borrower named in the Note and Deed of Trust then borrows the same money loaned to surrogate lender at different terms and conditions than the original transaction, thus, the Borrower (Plaintiff) has no possible means of satisfaction or assent, and the surrogate lender (debtor) has offered no consideration, three bare essentials in the formation of a contract.

Plaintiff alleges that the borrower was subjected to consumer financial transactions that did not allow for a satisfaction of the debt to the real party entitled to such a satisfaction *ab initio*.  Thus, the finance contract/quasi-contract has never been in favor of the proper party as a "Lender" and any and all documents that rely on the Notes and Deeds of Trust flow from a poisonous tree and lack equitable and legal authority.  The unknown party as the beneficiary of the obligation never contracted with Plaintiff.  This is an Article IX (U.C.C.) transaction by definition.

The consumer loan subject to this Complaint was funded by a secondary market provider of lending ("Warehouse Lender") who pooled the proceeds from the sale of mortgage-backed securities in what is known as "forward-selling".  This

---

[2] Under Article 9, a "debtor" simply holds an interest (typically, an ownership interest), as opposed to a security interest or other lien, in the collateral.  U.C.C. § 9-102(a)(28)(A).  Additional parties defined in Article 9 include: he "obligor," or, simply put, the party who owes the obligation secured by the collateral (and who may or may not also be the "debtor"), and the "secondary obligor," a sub-class of obligors, who is essentially a guarantor or surety of the obligation secured.  U.C.C. § 9-102(a)(59) and (71).

12

ENFORCEMENT ACTION

practice is common amongst major banking firms wherein the firm will "forward sell" what are known as triple "AAA" rated mortgage-backed securities, then pool the funds in an investment vehicle and create a secondary distribution network of "warehouse lenders". "Warehouse lending is a short-term involving the line of credit provided to a mortgage banking company to fund the closing of mortgage from the closing table to sale in the secondary market. The mortgage note is used as collateral for interim financing until the mortgage is sold and delivered to the permanent investor. Mortgage bankers draw upon the line of credit to fund a mortgage at closing or to purchase a closed loan from another originator". See www.mbaa.org (Mortgage Bankers Association). Because material facts were never disclosed to Plaintiff, Plaintiff's rescission rights are within the three-year statutory limitations and are timely. Since Defendant, WELLS FARGO, failed to challenge the rescission within twenty (20) days, they have waived any and all affirmative defenses to it.

    Furthermore, WSB, Plaintiff's original lender, irrevocably sold all right, title and interest in Plaintiff's mortgage loan to the 28 Trust, a mortgage-backed securities trust with a Real Estate Mortgage Investment Conduit, hereinafter referred to as REMIC, election and continuing application. The sale occurred on or about February 26, 2007, the Closing date of the 28 Trust as mandated by the governing trust documents.

ENFORCEMENT ACTION

In order for an investment entity to qualify as a REMIC, all steps in the contribution and transfer of the notes must be a "true" and "complete" sale between parties in order to achieve bankruptcy remoteness.  Upon formation of the REMIC – qualified 28 Trust, the Depositor sells the pooled mortgage loans in exchange for the securities certificates issued by the trust.  Each step of the "true sales" process must be supported by effective delivery and certification of acceptance of the receiving party of the endorse mortgage note **and** assigned deed of trust, reflecting the complete intervening assignments and transfers of each mortgage loan from each assignor to the last assignee.

The securitization of Plaintiff's mortgage loan is one transaction designed to comply with the aforementioned requirements of the Tax Code.  Specifically, the first "true sale" occurred when WSB, as loan originator, sold Plaintiff's loan to the Sponsor/Seller, World Savings Bank, FSB, of the 28 Trust.  **This was the first sale of the Plaintiff's mortgage loan**, but <u>without</u> effectively assigning the Deed of Trust and indorsing the underlying original Promissory Note to the interim loan purchaser Sponsor/Seller, World Savings Bank, FSB.  Immediately thereafter, the second sale occurred when the Sponsor/Seller of the Trust, World Savings Bank, FSB, sold the securities certificates, backed by the securitized mortgage loans, to the Depositor.  **This was the second sale of the  mortgage loan**, but <u>without</u> effectively assigning the Deed of Trust and indorsing the underlying original

ENFORCEMENT ACTION

Promissory Note to the interim loan purchaser Depositor of the 28 Trust. Immediately thereafter, the third sale occurred when the Depositor of the 28 Trust sold the securities certificates, backed by the securitized mortgage loans, to the Issuing Entity, World Savings REMIC 28 Trust. **This was the third sale of the Plaintiff's mortgage loan**, albeit still without the intervening assignment of deed of trust and the underlying original Note from WSB to The Bank of New York, as "Trustee" for the 28 Trust.

In accordance with the precise terms and REMIC provisions of the PSA (i.e., required "true sale" of each mortgage loan), securitization Sponsor/Seller, World Savings Bank, FSB and Depositor **were each paid in full** for selling Plaintiff's mortgage loan in the verified securitization transaction. However, a review of the chain of title of the mortgage property in the official records of the San Francisco County Recorder does not show any valid assignment of the mortgage (Deed of Trust) from original lender WSB to all of the aforementioned entities, on or about February 26, 2007, the Closing date of the REMIC MBS Trust, or 90 days thereafter.

This was a material breach of the binding and governing terms of the trust agreement, which resulted to an irreversible break in the chain of title of the mortgage property and ownership of Plaintiff's mortgage loan – with the present beneficiary, mortgagee and successor lender <u>unassigned</u>, <u>undocumented</u> and

15

ENFORCEMENT ACTION

UNKNOWN to date.

## Plaintiff is Entitled to Declaratory Relief Based on the Notice of Recission Pursuant to TILA

Congress has provided that the right to rescind is extended to the expiration of three years **after** consummation of the transaction; *15 U.S.C. § 1635(f)*; *Reg. Z §§ 226.15(a)(3)*, *225.23(a)(3)*.  Under California law, a loan contract **is not** consummated when the borrower signs the Promissory Note and Deed of Trust. In the case at bar, there was nondisclosure of material facts relating to the consumer transaction, the statutory three-year time frame has yet begin to run.

Of primary concern and importance, as clarified in the United States Supreme Court in *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 190 L. Ed. 2d 650, 574 U.S. (2015), the obligor's exercise of the rescission triggers a series of steps through which the transaction is unwound.  First, when an obligor exercises his right to rescind, he is not liable for any finance charges or other charges, and any security interest given by the obligor becomes void upon rescission.  *15 U.S.C. § 1635(b)*.  Second, within twenty (20) days after receipt of the notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect termination of any security interest created under the transaction.  *Ibid*.  Third, upon performance by the creditors'

ENFORCEMENT ACTION

mandatory obligations under this section, the obligor shall tender any property the creditor has previously delivered (or its reasonable value). *Ibid.* Pursuant to Reg. Z notice is given by mail, telegram, or other means of written communication. 12 C.F.R. 226.23(a)(2); See 12 C.F.R. Pt. 226, Apps. H-8, H-9 (Model forms for exercising Rescission Right); 12 C.F.R. 1026.239(a)(2).

Erroneously, lower and federal Courts have misinterpreted *15 U.S.C § 1635* as requiring the obligor to file a lawsuit to effect rescission. However, the plain language of the statute puts no such requirement on the obligor. That provision "says nothing in terms of an action" or a "suit's commencement"; rather it speaks to the "duration" of the rescission right. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998). The *Supreme Court* found nowhere does *15 U.S.C. § 1635*(a) allow for a debate as to disputed or undisputed notices; simply put the transaction and its contracts are void as a matter of law upon mailing the Notice of Rescission. *Jesinoski, supra*, at 793. Based on the clarification of the TILA rescission by the *Supreme Court*, Plaintiff's contract became void as of April 14, 2014. Regardless to whether Defendant feels it was timely or not, they failed to file a declaratory action against Plaintiff within the statutory and mandatory twenty (20) day period. Regardless to whether the creditor fulfills its legal requirement to return all funds paid on the loan and reflect the termination of the security instrument, the loan no longer exists; the contract is void and any acts by any party based on the loan or

ENFORCEMENT ACTION

contract are illegal.

Plaintiff alleges that the loan documents were prepared and executed in such a way as to conceal material facts that remain undisclosed.  In accordance with section *125(f)* of the Act, the rescission period is extended where there is fraudulent concealment shown, as plead in this Complaint.  *See Bank of New York v. Waldon*, 751 N.Y. S. 2d 341 (Sup. Ct. 2002).  In *Curry v. Fidelity Consumer Discount Co.*, 656 F. Supp. 1129, the court held that:  "The purpose of the Act are further demonstrated through a standard of strict liability against creditors who fail to make mandatory through a standard of strict liability against creditors who fail to make mandatory disclosure. *15 U.S.C. § 1640(a)*.

*In Re Ramsey, supra*, on which the district court relied, focused on the moment at which Reg. Z states that consummation occurred.  But under Reg. Z consummation cannot occur until the borrower becomes "contractually obligated," and under state law, the borrower is not contractually obligated before a contract between the parties is formed.  Reg. Z does not purport to substitute "consummation" for "formation of a contract."

The statutory scheme created by Congress in TILA requires strict compliance by creditors when it comes to rescission.  TILA rests squarely on procedure rather than substance.  If a creditor acquiesces or fails to challenge a borrower's rescission within 20-days of a notice of rescission, the rescission is

complete.  Any defenses after the statutory 20 day period not only strays outside the four-corners of the Complaint, but it strays outside the strict statutory requirements of TILA.

Plaintiff mailed Defendant, WELLS FARGO, his Notice of Rescission on April 14, 2014.  Under *§226.23(b)*, delivering notification to the person or address to which the consumer has been directed to send, payments constitutes delivery to the creditor or assignee.  The Office Staff Commentary, a commentary made by the Federal Reserve, clearly indicates notice to an agent can suffice as notice to the principal.  Rescission rights are equally enforceable against original creditors and assignees.  *15 U.S.C. § 1641(c)*.  As noted by the Official Staff Commentary, the creditor's interest in the property is **"automatically negated regardless of its status and whether or not it was recorded or perfected".**  (*Official Staff Commentary §§ 226.15(d)(1)-1, 226.23(d)(1)-1*).  Furthermore, the **security interest is void and of no legal effect** irrespective of whether the creditor makes any affirmative response to the notice.  Also, strict construction of Reg. Z would dictate that the voiding be considered absolute and not subject to judicial modification.  The voiding of the security interest is not a procedure in a sense of a step to be followed or an action to be taken.  It is automatic by **operation of law**.  Since the rescission process is self-enforcing, failure to comply with the rescission obligations subjects Defendants to potential liability.  Non-compliance is a

ENFORCEMENT ACTION

violation of the act which gives rise to a claim for actual and statutory damages under *15 U.S.C. § 1640*, there has been no compliance by Defendants.

More than twenty days has elapsed since the Notice of Rescission was received by Defendants and/or the actual "creditor", and Defendant, WELLS FARGO, has failed to perform any of the acts required by *15 U.S.C.§ 1635(b)*, and have instead, continue to try and enforce the debt by not canceling collection efforts.

### Doctrine of Equitable Tolling

The doctrine of equitable tolling principles are to read into every federal statute of limitations unless Congress expressly provides to the contrary in clear and ambiguous language, *see Rotella v. Wood*, 528 U.S. 549, 560-61, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000). Since TILA does not evidence a contrary Congressional intent, its statute of limitations must be read to be subject to equitable tolling, particularly since the act is to be construed liberally in favor of consumers.

The doctrine of equitable tolling is derived from the belief that a statute of limitation should not run against a Plaintiff who is unaware of his cause of action. *See Mucha v. Dwinski*, 1991 WL 46534 which held:

> The doctrine of equitable tolling is derived from the belief that a statute of limitation should not run against a plaintiff who is unaware of his cause of action. *Cerbone v. Intern. Ladies' Garment Workers'*

*Union*, 768 F.ed 45, 48 (ed Cir. 1985). While originally developed in the context of actions based on fraud, the doctrine has been applied in situations where the defendant has engaged in conduct that concealed from the plaintiff the existence of the action of action. *Ibid*. Thus, as a "matter of fairness," a court may toll the running of the applicable limitation period where an employee has been "misled by his employer" or where some "extraordinary" circumstance has prevented him from exercising his rights. *Cerbone, supra* at 49; *Miller v. Intern. Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir.) cert. denied, 474 U.S. 851, 106 S. Ct. 148, 88 L.Ed.2d 122 (1985); *see also Dillman V. Combustion Engineering, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986).

The equitable maxim that "no man may take advantage of his own wrong," older than the country itself, is deeply rooted in our federal jurisprudence. As stated by Mr. Justice Miller in *Insurance Co. v. Wilkinson*, 80 U.S. (13 Wall.) 222, 233, 20 L.Ed. 617 (1871):

> The principal is that where one party has by his representation or his conduct induced the other party to a transaction to give him an advantage which it would not in a court of justice be permitted to avail himself or the advantage…where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.

Repeatedly throughout our judicial history, the Supreme Court has applied equitable tolling to statutes of limitations to prevent unjust results or to maintain the integrity of a statute. *See Bailey v. Glover*, 88 U.S. (21 Wall) 342, 349-50, 22 L.Ed. 636 (1874) (Bankruptcy Act of 1867); *Exploration Co. Ltd. v. United States*, 247 U.S. 435, 449-50, 38 S.Ct. 571, 573-74, 62 L.Ed. 1200 (1918) (Act of March 3, 1891, 26 Stat. 1093, to vacate land patents); *Holmberg v. Armbrecht*, 327 U.S.

21

ENFORCEMENT ACTION

392, 66, S.Ct. 582, 90 L.Ed. 743 (1946) (Federal Farm Home Act); *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (Federal Employers' Liability Act). Cf. *Zipes v. Trans World Airlines*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (Title VII time requirement for filing charges with Equal Employment Opportunity Commission).

Furthermore, lenders could structure the transaction so that borrowers could not discover the nondisclosure until the statute of limitations have elapsed, as is the case in the case at bar. See *Jones v. TransOhio Savings Ass'n.*, 569 F.Supp. 1188, 1190-91 (N.D. Ohio 1983), rev'd 747 F.2d 1037 (6th Cir. 1984). Because borrowers may not discover the TILA Violations until more than the allotted time under TILA after execution of the original contract, it would be inconsistent with the remedial and consumer protection goals of the statute to bar suit when there is no reasonable way for the borrower to discover the wrong within the limitations period. *See Postow v. OBA Federal S & L Ass'n*, 627 F.2d 1370, 1379 (D.C. Cir.1980).

The scheme of TILA is to create a system of private attorney generals to aid its enforcement, *see McGowan v. King, Inc.*, 569 F.2d 845, 849 (5th Cir. 1978). Thus, Congress through TILA, sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit. *See Mourning v. Family Publications*

*Service, Inc.*, 411 U.S. 356, 363-64 nn. 18, 19, 93 S.Ct. 1652, 1657-58 nn. 18, 19, 36 L.Ed 318 (1973) (citing H.R.Rep. No. 1040, 90th Cong., 1st Sess., 13 (1967); S.Rep. No. 392, 90th Cong., 1st Sess. 1-2 (1967) U.S. Cong. & Admin.New 1968, p. 1962). The courts have construed TILA as a remedial statue, interpreting it liberally for consumer. *Riggs v. Government Employees Financial Corp.*, 623 F.2d 68, 70-71 (9th Cir. 1980). As the Sixth Circuit noted, "[o]nly if Congress clearly manifests its intent to limit the federal court's jurisdiction will it be precluded from addressing allegations of fraudulent concealment which by their very nature, if true, serve to make compliance with the limitation period imposed by Congress an impossibility." *Jones v. TransOhio Savings Ass'n.*, 747 F.2d at 1041.

It has been held that the limitations period in *Section 1641(e)* runs from the date of consummation of the transaction but the doctrine of tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.

## The Foreclosure was Wrongful and Illegal

A Deed of Trust to real property acting as security for a loan typically has three parties: the trustor (borrower), the beneficiary (lender), and the trustee. The non-judicial foreclosure system is designed to provide the lender-beneficiary with an inexpensive and efficient remedy against a defaulting borrower, while

23

ENFORCEMENT ACTION

protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)

In the case at bar, Plaintiff's Deed of Trust was canceled by operation of law as of April 14, 2014. No legal or rightful foreclosure could have taken place. Furthermore, Defendant was not the entity who owned Plaintiff's debt obligation or the entity who was entitled to payment.

A beneficiary or trustee under a Deed of Trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure. *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062; *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7.) A foreclosure initiated by one with no authority to do so is wrongful for purposes of such an action. *Barrionuevo v. Chase Bank, N.A.*, supra, 885 F. Supp.2d at pp. 973-974; *Ohlendorf v. American Home Mortgage Servicing* (E.D. Cal. 2010) 279 F.R.D. 575, 582-583.) This is the case in the matter at bar. Plaintiff suffered a foreclosure by an entity that had no authority to do so and was NOT the original beneficiary or the assignee or agent of the entity who had authority to instruct the trustee to initiate and complete a non-judicial foreclosure sale.

Furthermore, since Plaintiff's originating lender was never registered to transact business in the State of California, the Deed of Trust was void. A void

24

ENFORCEMENT ACTION

contract is without legal effect. "It binds no one and is a mere nullity." (*Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1362.) "Such a contract has no existence whatsoever. It has no legal entity for any purpose and neither action or inaction of a party to it can validate it…" *Colby v. Title Ins. And Trust Co.* (1911) 160 Cal. 632, 644.)

If a purported assignment, or lack of one, necessary to the chain of title by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever (*Colby v. Title Ins. And Trust Co., supra*, 160 Cal. At p. 644; Rest.2d Contracts, § 7, com. a), the foreclosing entity has action without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure. *Barrionuevo v. Chase Bank, N.A.*, at pp. 973-974.) Only the 'true owner' or 'beneficial holder' of a Deed of Trust can bring to completion a non-judicial foreclosure under California law." *Barrionuevo v. Chase Bank, N.A.* (N.D.Cal. 2012) 885 F.Supp.2d 964, 972*; see Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1378 [bank and reconveyance company failed to establish they were current beneficiary and trustee, respectively, and therefore failed to show they "had authority to conduct the foreclosure sale:]; cf. *U.S. Bank Nat. Assn. v. Ibanez* (Mass. 2011) 41 N.E.2d 40, 51 [under Mass. Law, only the original mortgagee or its assignee may conduct non-judicial foreclosure sale].) Defendant, WELLS FARGO, lacked the power

and authority to initiate and complete the foreclosure on June 25, 2014.

Unlike a voidable transaction, a void one cannot be ratified or validated by the parties to it even if they so desire. *Colby v. Title Ins. and Trust Co., supra,* 160 Cal. at p. 644; *Arnoff v. Albanese, supra,* 446 N.Y.S.2d at p. 370.) Parties to a securitization or other transfer may well wish to ratify the transfer agreement despite any defects, but no ratification is possible if the assignment is void *ab initio.* In seeking a finding that a Deed of Trust and assignment agreement was void, therefore, a plaintiff in Plaintiff MOHANNA's position is not asserting the interests of parties to the assignment or Deed of Trust; he is asserting his own interest in limiting foreclosure on his property to those with legal authority to order a foreclosure sale. This, then, is not a situation in which standing to sue is lacking because its "sole object…is to settle rights of third persons who are not parties." *Golden Gate Bridge etc. Dist. V. Felt* (1931) 214 Cal. 308, 316.)

A foreclosed-upon borrower clearly meets the general standard of standing to sue by showing an invasion of his or her legally protected interest (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175) – the borrower has lost ownership to the home in an allegedly illegal trustee's sale. (See *Culhane, supra,* 708 F.3d at p. 289 [foreclosed-upon borrower has sufficient personal stake in action against foreclosing entity to meet federal standing requirement.

//

ENFORCEMENT ACTION

## **Burden of Proof and Elements**

All Plaintiff is required to show is the loan was rescinded by virtue of a written notice.  Period.  Plaintiff has done so as evidenced by **Exhibit "C"**.

## **No Tender Required**

Pursuant to TILA, after Defendant, WELLS FARGO, received Plaintiff's Notice of Rescission, it had two options to take within the statutory twenty (20) day calendar period.  It could have begun the unwinding process by returning the down payment or earnest money and taking action to "reflect the termination of [the] security interest," pursuant to *15 U.S.C. § 1635(b)*.  Those actions would, in turn, have triggered Plaintiff's obligation to tender a payoff of the remaining amount.  *See Lippner v. Deutsche Bank Nat'l Trust Co.*, 544 F. Supp. 2d at 702 ("The issue of whether [the borrower] can satisfy her rescission obligations [does] not arise until [the lender] ha[s] completed [its] obligations pursuant to TILA.")  In the alternative, Defendant, WELLS FARGO, could have filed a declaratory lawsuit against Plaintiff to dispute Plaintiff's right to rescind the loan.  Defendant did neither of those things and the time for them to act has expired.  Once the time has expired, it is gone. Under TILA, after the statutory twenty (20) days are completed, the rescission is no longer subject to attack and its effective upon the date it was mailed.

//

ENFORCEMENT ACTION

**<u>As a Matter of Law the Notice of Rescission was Effective</u>**

The Notice of Rescission was mailed on April 14, 2014; the creditor, Defendant, WELLS FARGO, had twenty (20) days to file an action in dispute of the Notice of Rescission and chose NOT to do so.  The loan, Deed of Trust, and/or contract is void and must be cancelled as a matter of law effective April 14, 2014.

## VII.

## RELIEF REQUESTED

Plaintiff re-alleges each of the previous allegations as if set forth fully herein.

**WHEREFORE,** Plaintiff hereby requests Declaratory Relief as per the April 14, 2014 Notice of Rescission as follows:

a.  That the Deed of Trust recorded on December 28, 2006 in the San Francisco County Recorder's Office as Instrument No. 2006-I304945-00 be declared null and void.

b.  That all documents recorded on or against title to the subject property in the San Francisco County Recorder's Office after April 14, 2014 be declared null and void

c.  That a Judicial Declaration be entered, that the title to subject "Property", is vested in Plaintiff alone and that Defendants and each of them be declared to have no interest either Legal or Equitable, right, estate, or lien in subject

ENFORCEMENT ACTION

"Property", and that the Defendants, their Agents or Assigns, be forever enjoined from asserting estate, right, title or interest to subject "Property".

    d.  For a declaration that the security interest in Plaintiff's Property is void, canceled by operation of law.

    e.  Award Plaintiff statutory damages for Defendant's failure to comply with TILA including Defendant's failure to properly file a declaratory action against Plaintiff to challenge the Notice of Rescission within the twenty (20) calendar days allowed under the Act. *15 U.S.C. § 1635(b)*.

    f.  For reasonable cost of suit incurred in this action and attorney's fees and.

    g.  For such additional and further relief as the Court may deem proper and reasonable.

DATED:  February 15, 2016

Respectfully submitted by:

_Keyhan Mohanna_

Keyhan Mohanna, individually and as Trustee
of the Keyhan Mohanna Revocable Trust Dated
July 8, 2003
Plaintiff

29

ENFORCEMENT ACTION

**VERIFICATION**

I, Keyhan Mohanna, an individual and as Trustee of the Keyhan Mohanna Revocable Trust Dated July 8, 2003, am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in San Francisco, California on February 15, 2016.


Keyhan Mohanna, individually and as Trustee
of the Keyhan Mohanna Revocable Trust Dated
July 8, 2003
Plaintiff

ENFORCEMENT ACTION

Exhibit A

EXHIBIT "A"

## DESCRIPTION

All that certain land situated in the State of California, County of **SAN FRANCISCO**, City of **SAN FRANCISCO**, described as follows:

PARCEL 1:

CONDOMINIUM UNIT NO. 1, LOT 50, AS SHOWN UPON THE CONDOMINIUM MAP AND DIAGRAMMATIC FLOOR PLAN ENTITLED "MAP OF 1405 GREENWICH STREET" WHICH WAS FILED FOR RECORD ON DECEMBER 10, 1999 IN PARCEL MAP BOOK 44, AT PAGES 60 TO 65, INCLUSIVE, AND THE "AMENDMENT TO CONDOMINIUM PLAN" RECORDED MAY 5, 2000 AS DOCUMENT NO. 2000-G769926-00, IN THE OFFICE OF THE RECORDER OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA (REFERRED TO HEREIN AS "THE MAP"), AND AS FURTHER DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS OF 1405 GREENWICH STREET HOMEOWNERS ASSOCIATION RECORDED ON MAY 5, 2000 AS DOCUMENT NO. 2000-G769926-00, OFFICIAL RECORDS OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA (REFERRED TO HEREIN AS "THE DECLARATION").

EXCEPTING THEREFROM, ANY PORTION OF THE COMMON AREA LYING WITHIN SAID UNIT.

RESERVING THEREFROM:

(A) EASEMENTS THROUGH SAID UNIT, APPURTENANT TO THE COMMON AREA AND ALL OTHER UNITS, FOR SUPPORT AND REPAIR OF THE COMMON AREA ALL OTHER UNITS.

(B) EASEMENTS, APPURTENANT TO THE COMMON AREA FOR ENCROACHMENT UPON THE AIR SPACE OF THE UNIT BY THOSE PORTIONS OF THE COMMON AREA LOCATED WITHIN THE UNIT.

PARCEL II:

AN UNDIVIDED 100% INTEREST IN AND TO THE COMMON AREA AS SHOWN AND DEFINED ON THE MAP, RESERVING THEREFROM THE FOLLOWING:

(A) EXCLUSIVE EASEMENTS, OTHER THAN PARCEL III, AS DESIGNATED ON THE MAP AND RESERVED BY GRANTOR TO UNITS FOR USE AS DESIGNATED IN THE DECLARATION; AND

(B) NONEXCLUSIVE EASEMENTS APPURTENANT TO ALL UNITS FOR INGRESS AND EGRESS, SUPPORT, REPAIR AND MAINTENANCE.

PARCEL III:

(A) THE EXCLUSIVE EASEMENT TO USE THE PARKING AREA(S) DESIGNATED P-1 AND P-2, ON THE HEREINABOVE MENTIONED "AMENDMENT TO CONDOMINIUM PLAN".

PARCEL IV:

A NONEXCLUSIVE EASEMENT APPURTENANT TO PARCEL I ABOVE FOR SUPPORT, REPAIR AND MAINTENANCE, AND FOR INGRESS AND EGRESS THROUGH THE COMMON AREA IN ACCORDANCE WITH CALIFORNIA CIVIL CODE SECTION 1361 (A).

PARCEL V:

ENCROACHMENT EASEMENTS APPURTENANT TO THE UNIT IN ACCORDANCE WITH THE PROVISIONS OF THE DECLARATION.

APN No: **LOT 050 BLOCK 0523**

Exhibit B

# State of California
## Secretary of State

### Certificate of No Record
### Corporation

I, ALEX PADILLA, Secretary of State of the State of California, hereby certify:

That the Corporations Code of the State of California provides for the preparation and execution of Articles of Incorporation and their filing in the office of the Secretary of State in order to incorporate a California corporation; and

That the Corporations Code of the State of California provides for the filing in the office of the Secretary of State of a Statement and Designation and a Certificate of Good Standing (certified copy of Articles or Certificate of Incorporation as to a corporation qualified prior to September 18, 1959) in order to qualify a foreign corporation to transact intrastate business in this State.

I further certify that a diligent search has been made in the corporate files of this office and that there is no record of a California or foreign corporation, active or inactive, of the name: **WORLD SAVINGS BANK, FSB**

**IN WITNESS WHEREOF**, I execute this certificate and affix the Great Seal of the State of California this day of February 12, 2016.



ALEX PADILLA
Secretary of State

Exhibit C

April 14, 2014

Wells Fargo Home Mortgage
c/o Mr. John Stumpf
420 Montgomery Street
San Francisco, CA 94104

Sent Certified Mail #7013 3020 0001 4610 3090

RE:  KEYHAN MOHANNA AS TRUSTEE OF THE KEYHAN
     MOHANNA REVOCABLE TRUST DATED JULY 8, 2003 AND KEYHAN MOHANNA
     INDIVIDUALLY

Alleged Account #:  44723880 (*Wells Fargo*)

Property Address:  1405 Greenwich Street, Unit #1, San Francisco, CA 94109


To Whom It May Concern:

I HEREBY EXERCISE MY RIGHT TO RESCIND THE LOAN TRANSACTION IN ITS
ENTIRETY UNDER THE USURY AND GENERAL CLAIMS THEORIES AND CAUSES OF
ACTION.  BY FAILING TO DISCLOSE THE TRUE LENDER AND USING SUBTERFUGE
TO HIDE THE FACT THAT THE "LENDER" AT CLOSING WAS PAID TO POSE AS THE
LENDER WHEN IN FACT AN UNDISCLOSED UNREGISTERED THIRD PARTY HAD
RENTED THE CHARTER OR LENDING LICENSE OF THE "LENDER," THE
LIMITATION ON MY RIGHT TO RESCIND WAS EXTENDED INDEFINITELY.  UNDER
STATE AND FEDERAL LAW, THE MORTGAGE IS NOW EXTINGUISHED AND YOUR
RIGHTS UNDER THE TRUSTEE DEED, IF ANY, HAVE TERMINATED.

PURSUANT TO 12 C.F.R. §226.2(a)(13), "CONSUMMATION" OF THE LOAN OCCURS
WHEN THE BORROWER IS "CONTRACTUALLY OBLIGATED."  THE POINT AT
WHICH A "CONTRACTUAL OBLIGATION...IS CREATED" IS A MATTER OF STATE
LAW.  UNDER CALIFORNIA LAW, CALIFORNIA CODE OF CIVIL PROCEDURE § 1550,
A CONTRACT IS FORMED WHEN THERE ARE (1) PARTIES CAPABLE OF
CONTRACTING, (2) MUTUAL CONSENT, (3) A LAWFUL OBJECT, AND (4)
SUFFICIENT CAUSE OF CONSIDERATION.

"THE NINTH CIRCUIT HELD THAT UNDER CALIFORNIA LAW, A LOAN CONTRACT
WAS NOT CONSUMMATED WHEN THE BORROWER SIGNED THE THE PROMISSORY
NOTE AND DEED OF TRUST BECAUSE THE ACTUAL LENDER WAS NOT KNOWN AT
THAT TIME.  UNDER THESE CIRCUMSTANCES, MY LOAN WAS NOT
"CONSUMMATED" AND IS STILL NOT "CONSUMMATED" BECAUSE THE ACTUAL
LENDER, THE TRUE "SOURCE OF FUNDS" FOR MY LOAN, HAS NOT BEEN
IDENTIFIED.  UNTIL THE ACTUAL LENDER IS IDENTIFIED THERE IS NO LEGALLY
ENFORCEABLE CONTRACT."  JACKSON V. GRANT, 890 F.2d (9th Circuit 1989).

I hereby rescind the above referenced loan and/or declare it to be null and void and demand treble damages for the face value of the note.

PLEASE GOVERN YOURSELVES ACCORDINGLY!

Sincerely,

*Keyhan Mohanna*

Keyhan Mohanna, Individually and as Trustee of the Keyhan Mohanna
Revocable Trust Dated July 8, 2003